Please be seated. Thank you. Madam Clerk, please call the next witness. The fourth district he was at. 2116 Mark Mitnick v. 440. Counsel, you may proceed. Good morning, Your Honors. May it please the Court. My name is James Hammond. I represent the plaintiff, appellant, and the injured employee in this case, Mark Mitnick. This is a case that deals with the issue of whether Mr. Mitnick's injury arose out of and in the course of his employment with Ford Motor Company while working on an assembly line for them. In arbitration, the injured employee testified as to the repetitive nature of his work for Ford, and there was a video shown, although the plaintiff and a co-employee who testified on his behalf did not believe that the video actually depicted the accurate speed of the assembly line. It did depict what actually he had to do in completing his job. He testified as to the number of weights of boxes that he had to lift every morning in setting up his job. He testified as to standing at his position for eight hours a day. And he testified as to he was required to twist at every car that he worked on, which was at least 60 cars an hour, in order to twist and use what's called an articulating arm that was used to shoot bolts up into the rear assemblies of these vehicles. That articulating arm was estimated at approximately 300 to 400 pounds. It magically would go up and down to shoot the bolts into the rear end of the vehicles. So what was the basis of the commission's decision? Did they determine that your client's injury was the result of a non-compensable neutral risk? Is that what they're saying, the act of bending over? Yes, Judge. Okay. They found that what he did when he hurt himself was that he bent over and picked up a bolt. And they found that that was a neutral risk. And they determined that he decided during the course of his testimony that that would be what he would rely on in his testimony at court. I'm not sure where that came from, because I went back and I looked at the testimony. And as I say, it testified as to twisting and reaching and doing numerous other activities on the job for each car, other than reaching for that bolt. Well, let's try and refine it. Sure. The Respondent's position is it was a non-compensable neutral risk. Is this an employment-related risk? And there is a distinction under the Young case, right? Well, yes, there is, exactly, Judge. In the Young case, they said that what he was doing he was specifically required to do was actually in his job description, that he'd be reaching into boxes and taking things out of those boxes, and that's how he got hurt. I think we should really get more basic. The fact that an employee is doing something that we all do, but if he's doing it in furtherance of his employer's business, then it's not really a neutral risk, is it? That's my point, Judge. It's an employment risk. Now, if an employee is standing somewhere and merely takes a few steps and trips on his own shoelaces, we turn around and say that's a neutral risk, there's going to be no compensability. But if he is doing something that furthers the employment business, then the analysis has to be different. And, Judge, my contention is that if there was a supervisor for Ford standing right next to him when that ball fell, he would be required to go and get that ball really quick and get that off the line. We don't want this assembly line to jam up. So I struggle a lot with the neutral risk and the specific duty of his employment. It's not written in his job description that part of what he does on the assembly line is pick up balls to make sure that the line doesn't jam up. That's not specifically written into his job description. But it's inherent part, though. It is inherent. It has to be. I mean, he made it clear, and I think the supervisor made it clear, that you can't let the assembly line loss. It makes sense. And he has to do that, right? It's a large production operation. There's 60 cars. So what kind of risk does that make it under this three category? Now, Judge, I struggle with it. And every time I think about it, I struggle with it. But it's not a specific job duty. It's not something that says you have to stand your weight for these balls. But does it have to be? Or need it only be in furtherance of the employee's business? I mean, if you take the position in furtherance of the employee's business, it doesn't have to be included within his job duty. I think in category where it says which the employee might reasonably be expected to perform, I mean, he absolutely would be expected to perform getting that bulb and picking it up on the floor. Because if he didn't, if he just stood there and said, I'm going to ignore these bulbs because now if I keep doing this, eventually I'm going to hurt my back, he'd be fired. Because that line would, because the bulbs drop pretty regularly. It's a part of the performance of his job. I think it is. I think it is. And, but the commission... The point is he's picking up a bulb to put into the employer's product, is he not? Well, correct. But, Judge, what he's doing is he's taking the bulb, he's loading it into this articulating arm, turning it around, then loading it into the vehicle. And while he's doing that, just as a consequence of his employment, the bulbs are falling. But that's not part of the job description. So what was the mechanism of injury here? When he was doing the articulation or when he picked up the bulbs? When he picked up the bulbs. Okay. And if you pick up bulbs, do you reuse the bulbs and put it in the employer's product? I would say they would be. I would say that they would be. I was just going to draw a distinction, and it may not be a meaningful distinction in the end here, but that bulb fell out of the articulating arm as the arm was swinging. It wasn't that the employee was carrying bulbs and then through clumsiness drops one. No, correct. This is a bulb that's actually in the articulating arm, falls out, and that's something that happens as part of the assembly line process. Correct. So you say it's not part of his job duty. One would argue that maybe you should be saying it is part of his job duty. I did it in my brief, Judge. But I mean, I understand the cases. I mean, there's the case, is it? Hancock, I believe, where it said it's not, you know, it wasn't required. He didn't have to do it. Well, I don't want to get into that. I know that there was concurring opinions and defendants. It's true in this case. I mean, there was a testimony, not just by the petitioner but also by, I think, a co-worker, that you had to pick up the bulb. Correct. It wasn't part of your job. Well, you're supposed to pick it up. Sure. Again, it didn't say it in the job description, but it's understood. You're on an assembly line. Those things drop in there. If it jams up, you can't do your job. Of course. It stops. Well, I mean, does it really have to be within the job duties? It must merely be distinctly associated with the performance of your work that you can reasonably be expected to do. I mean, then it becomes an employment risk. It's no longer a neutral risk. Exactly. And you're relying on Young as your principal case, right? I am relying on Young. Yes, I am. Okay. As the commission said, he's only bending over to pick up the bulb, but he's got to do that. He's got to do it fairly regularly. He's got to do it all day long. He's there 10 hours a day, and he puts himself at an increased risk also in that position. So it covers both of those risks. My contention is that it absolutely is part of the job, because if he doesn't do it, he's fired. I mean, he's done. I mean, that is really what we've been—I appreciate the question, because that's at the crux of my argument, and I don't want to rehash my brief over and over and take your honor's time. So you've basically, I think, gone through what I need to say. Okay, very good. You'll have also time in reply to respond. I appreciate it, Judge. Thank you. Thank you, Counsel. Counsel, you may respond. Good morning, Your Honors, Counsel. My name is Justin Schooley. I am here. I represent Ford Motor Company in this matter. And before we get into the risk analysis and risk categorization, I think it is also key to note that in the Commission's decision they were clear to point out that they also looked at the history of injury that was reported by Mr. Mindik to his various providers, and in their decision they write that the varying histories provided to the providers undermined his claim for an accident and rising out of it in the course of his employment. And I think that goes directly to a question that was asked by Justice Holtridge just now. What is the mechanism of injury in this claim? And the Commission found that the inconsistent histories did not corroborate an accident arising out of and in the course of Mr. Mindik's employment. We have at one time he said he was twisting his torso. There's another medical record that says no. Counsel, I'm going to interrupt you right there. They simply used the word undermine, but they never in their decision indicated that they found no accident based on inconsistent histories. Is that correct? You are correct. They found a non-compensable accident based on the neutral risk analysis, and then they also had the accounting cook analysis that they went through. And that formed the basis for their decision. Is that right? Yes, that is correct. But they also looked at the inconsistent histories in rendering their decision as well. So I just wanted to point that out. But we may inexorably and eventually get to the issue of assessing the risk to which the claimant was exposed. And so to ask you a pointed question, how is this case different than the precedent that was established in the Young case? I think this case is different from the Young case in that in Young we had a box that was 36 inches deep, and the employee consistently reported, I overstretched. I had to reach farther into the box, which is distinguishable from this case here, where the petitioner, if we assume that he was bending, and that's the incident that he was relying upon, the act of bending is an act that every member of the general public is exposed to every day. And I believe that this is a neutral risk case. I believe the neutral risk analysis should apply. I don't believe it's an employment-related risk. You've already hit on and talked about the bolts. Was he required to pick up the bolts? As Mr. Hammond pointed out, that wasn't required explicitly in his job duties. Just as — Let's assume you're right about that, explicitly described in his job duties. But can it fairly be argued that doing that, however, wasn't absolutely necessary, the performance of the job? Because if the machine jams, can he do his job? Obviously he can't. He can't work with a jammed machine, can he? That is correct. So why is that necessary to the performance of his job? The act of bending in and of itself, though, is a neutral risk that every individual in the general public is exposed to. It's not bending to pick up a bolt that fell off of a machine. That's entirely different. But there is nothing in the record to show that the manner in which he was required to bend subjected him to an increased risk. It may not be manner. Okay. Let's go back and let's say this machine requires a lever to activate. And we have the production history of this line. Okay. Flexing your wrist, is that a neutral risk? People do it all the time. I would be less inclined to say flexing of your wrist because I don't think we stand here and flex our wrists constantly. I mean, this morning, I put on one sock, I bent over to put on one sock, I bent over to put on another sock. You just flexed your wrist right now four times. Did I? Yes, you did. And the distinction is I don't have a lever in my hand that I'm twisting a lever to do that requires extra force. Okay. So now we've got something flexing that's tied into the operation of an employer's machine. Correct. Okay. So you'd say that really is, where does that fall? Is that a neutral risk? Is that an employment-related risk? Where does that fall? I'm more inclined to say that that's a neutral risk and the fact in conjunction with the lever, if there's a medical opinion that supports the causing of the torque on the lever, then contributed to the employee's whatever, I'm assuming it's a wrist injury, then that case is more compensable in my mind than what this case is. Okay. So we've got a kinesiologist who's saying there's torque, there's pressure on that lever, which is not what the general public would be exposed to when they just, as you are doing and I'm doing, flexing our wrist. Correct. Okay. So that moves it into that first category. Is that what you're thinking? The first category meaning? Employment-related risk. I'm still more inclined to categorize it as a neutral. If the testimony is, I think flexing with a lever in my hand is different than just flexing my hand like this. So I would say that is more than it is. Now we've got this machine which he's flexing with his lever that's picking up bolts apparently and moving them in to install. But the machine throws out some of these bolts and they fall down and he's regularly picking up those bolts. I think that changes the fact pattern that we're dealing with here. Regularly, I think, how many times is regularly, which I think it's a factual question for the commission to determine, which they did in this case, and they determined that the facts in this case don't present. There was no increased risk created by the employment in a neutral risk situation. And the fact pattern that you were just presenting, I would categorize bending over to pick up those bolts as a neutral risk and not an employment-related risk. Okay. And I think that that's a factual determine for the commission to make, which I think they did here. And it's not against the manifest weight of the evidence for them to conclude that bending over does not subject, did not subject Mr. Mitnick to an increased risk of accident, and therefore the decision must stand. Thank you, counsel. Counsel, you have time to reply. Just really briefly. The respondent's not arguing against it, I don't believe. The respondent's not fighting that the injury occurred during the work. Although it's not in the job description that he has to bend over to pick up these bolts, I think it's clear that he has to do that as part of his job. And the petitioner, I would also point out that as part of his job, as noted in my brief, the petitioner did a lot more than just bending over on that day to pick up that bolt. He feels that that's what caused his injury on that day, but he also did bending and twisting and reaching and a lot of other things during that morning before he started to really feel the pain. That could also have done it. We don't know what actually herniated his disc that morning. But all of those things, I believe, and it's the petitioner's contention, are part of his employment, part of his job duties, and are specifically related to the accident. Can I ask you a question? What are we to do with the commission's finding where they say that the evidence demonstrated that his lumbar condition was so deteriorated that any activity of normal life was sufficient to cause the petitioner's spine to break down further? What are we supposed to do with that finding? Judge, I don't know. I honestly don't know where it came from. How could he have had? I mean, he mentioned that he did have a problem, and I think it was an L5S1, six years prior to that, but he missed no work from that time up until the date of this accident. And I think the commission was... Just on that point. Certainly. He missed work, but you're saying not specifically related to that prior back injury? No. Are you saying he went six years with no... He went six years without any. The reason why I ask the question is because this was an issue in CISPRO, and the Supreme Court in CISPRO relied on an out-of-state case where they said, as far as we can judge on such a matter, the accident came from the disease alone, so that whatever the man had been doing, it would probably have come all to the same, or whether the employee contributed to it, employment contributed to it. In other words, did he die from the disease alone, or from the disease and the employee taken together looking at it broadly? And it occurs to me that if it's the latter, it's compensable, even though he had such a deteriorated condition, that if he would have bent over in his own shower, it would have produced the same result. But if he did it while he was working, you've got the employment circumstance at least as a cause. But that's just not... That's just not... It's not supported by the record? Exactly, Judge. It's not. I was surprised when I saw the decision. There's no medical reports? No. Because they put it in their decision two places. I know. They stuck it in. Judge, I don't know. I don't know what the thought was there. Pulled off the shelf some more, huh? Yeah. Thank you, Judges. Thank you, Counsel Walsh, for your arguments on this matter this morning. We've taken your advisement, the written dispositional, late sheet. Madam Clerk, please call the next case. 115-1371, Brennan Gambrel v. Odom, 4-1-2. Counsel, you may proceed. Your Honor, may it please the Court? My name is Dennis Lynch. I represent the employee appellant, Brennan Gambrel. Your Honor, the central issue in this case is whether the commission correctly followed the instructions on remand from the circuit court. Typically, in these cases where there was a remand to the commission and then heard again by the circuit court, this court would first look to whether that initial remand order was correct. However, in this case, there's been no argument. We usually go back and look at the initial commission decision first. And if, in this case, that initial commission decision was not against the manifest weight of the evidence, we don't even need to consider whether or not the remand order was filed. Do you agree with that? That's a better way to put it, Your Honor, yes. You would look as to whether that initial decision was against the manifest weight of the evidence. I think, in this case, the employer, Illinois Tool Works, has not argued that that initial decision was consistent with the manifest weight of the evidence. And so that's not really an issue in this case. I think the only issue is whether the decision on remand is correctly followed those remand instructions. Counsel, let me ask you a threshold question. Did anybody witness the alleged workplace accident? I don't believe so. What do you do with the commission did not believe the claimant when he testified he injured his back on July 26, 2011 while lifting totes? And they pointed out that he treated with four different doctors over a period of time, none of whom recorded history of an injury on that date. So if it's on a lack of proof, how did the commission go wrong? Well, because there's, although there's not a witness to the accident itself, you've got two witnesses that he reported the accident to immediately after it occurred. You've got a human resources official the next day that he reported the accident to and gave a reported, a recorded statement. And there's some other, pardon me, issues in terms of he had a normal EMG before this accident, but not after the accident, and he started missing work again after this accident. Why would he go to four different doctors and never mention the lifting injury? Well, I guess. Isn't that a little unusual? First, first, I think just to quarrel a little bit, Your Honor, the doctors didn't record that he said anything about a lifting injury, which is not exactly the same as he didn't mention it. They recorded, in some cases, they recorded it and then related it back to the first one. To the 20-ton accident, correct. So he was given the history, but the history he gave was the first one. Right. And I think that's what is a little unusual about this case, is that he had had an incident before, he's got an aggravation now, and so I don't think that is then that unusual that they wouldn't record this other trauma. He reports it to his supervisors, he reports it to human resources, and none of those witnesses are called and that recorded statement isn't produced. And I think that gives rise to... None of them were called by who? Well, none of them were called by either party. But that's on you, isn't it? I don't think so, Your Honor. I think the law is pretty clear cut on the adverse presumption that you're not required to call an opponent's employee as a witness, that they're not considered equally available to you. How would we make that conclusion without knowing more about the circumstances? I mean, you have to admit, the claimant has to prove his case. He does, certainly, but his own testimony alone is sufficient, and he testified... If he's believed by the commission. If he's believed, but I think that the problem is the commission on remand, that's the first time they question the credibility of the petitioner, and they still don't consider the adverse presumption that's created by the employer's failure to call these witnesses or produce the recorded statement. So you've got a flawed decision by the commission as to the rules of law that they need to apply, and especially coming back on remand from the circuit court, they're required to follow those instructions to the letter, and that is not what they did. The commission did not apply that adverse presumption. They really try to have it both ways to try and avoid this sort of scenario, but they still say his testimony is unproper, and they talk about the petitioner's testimony standing alone. Well, it didn't stand alone. He gave a report to his supervisors, gave a report to human resources. That was never contradicted. Briefly, the employer's position that those witnesses' testimony is really only relevant to notice, I think it is not just relevant to notice, it is relevant to whether an accident occurred. The fact that he reported it to his supervisors immediately after it happened would be strong evidence that the employer's testimony is unproper. It would be, in the absence of an accident, better evidence than whether he reported it to doctors weeks later. I think it is relevant to those issues. Unless there's any other questions, I'll just wait for a reply. Thank you. Thank you, counsel. Counsel, you may respond. Good morning, justices. May it please the court, counsel. My name is Peter Pichalski. I'm with the law firm Hennessey & Roach. My office represents the defendant, Illinois Tool Works. Assuming time permits, I do plan on addressing three subjects. First, the ruling on the issue of accident as it relates to the July 26, 2011, injury date, this concept of an adverse evidentiary presumption, and then the argument by plaintiff that there was error in the commission remand decision. But first, I want to start with the issue of accident. I believe this is a very straightforward issue. Our question is whether petitioner's injuries from July 26, 2011 arose out of and in the course of his employment. It's a question of fact. Circuit court correctly found that the commission decision on remand was not against the manifest weight of the evidence. What about the original commission decision? I think I heard your opposing counsel say that you're not even arguing that the original decision was not against the manifest weight of the evidence. I mean, you're bringing it here to argue that. It's somewhat of a precarious position because I think the commission got it right. I think they got it right on both their decisions. But in the decision on remand that they issued, their most recent decision, they do acknowledge that there were some statements in the original decision that may have been factually inaccurate. I believe that they said there was no corroborating evidence whatsoever. And then in the decision on remand, they kind of slapped themselves on the wrist a little bit and said, well, there was some evidence of corroboration. He did provide notice to a couple of supervisors. He did give a recorded statement to an HR representative. Now, they didn't think that that in any way could cure what they considered to be very fatal credibility issues with this claimant. But they did acknowledge on the issue of remand that, hey, maybe it was a poor choice of words to say that there was no evidence whatsoever. But it was not impactful in any way, shape, or form in the original decision or the subsequent. Let me put it this way. If the circuit court originally had confirmed the original commission decision, you've got to argue that it was not against the manifesto of the evidence. Sure. Oh, without a doubt. But I think the decision on remand is exactly what – you know, I'm glad that I have to remand the decision because I just think it's that much more thorough. We get all kinds of commission decisions where, yes, you know, it could be more specific. But the question is, is there sufficient evidence in the record to support the commission decision? And I think there was initially. I think there certainly is on the remand. Look, they found in Justice Hudson – It's the same evidence. It's the same evidence. It's the same evidence, and it's what Justice Hudson pointed out earlier, saying, Look, this is a gentleman who saw five separate medical providers following a state of loss. Not a single one of those five medical providers record any sort of a history of a re-injury or aggravation. That's in the original decision. It's in the subsequent decision. You know, the only thing, in my opinion, that kind of muddied the water, for lack of a better term, was this concept of an adverse evidentiary presumption. Because he's responding to your argument about a lack of corroboration in medical records. He's saying, But, yeah, he talked to human resources people. He talked to people at work, and he clearly said that he was injured, and the commission's decision is flawed because, according to him, they misapplied the implications of the adverse witness rule. So what sayeth you to that? It doesn't apply, and it doesn't apply for several reasons, and they are addressed in my brief. I will address each of those reasons separately. First off, I believe it's a clear waiver. You know, there's nothing in our trial record where they make issue of this at the time of hearing. Proofs are closed, and there's no request that any additional witnesses be brought in to testify. Prior to hearing, there's never a subpoena issue. The commission is more than competent, you know, when it comes to the rules governing procedure before the Illinois Workers' Compensation Commission. They expressly held that counsel had an opportunity to compel the production of any recorded statement or document and to compel the appearance of any witness, including the two supervisors, and it's uncontroverted that they never made any attempts. Justice Hudson, you mentioned it before. That's on them, and I think those are the words that you use, and I agree with that unequivocally. And I don't think that this concept, and this is, again, in my brief, it's not appropriate post-hearing relief. We can't, for the first time on appeal, say, well, wait a second. You know, defendant didn't offer this, and this person didn't testify when you didn't issue a subpoena seeking their attendance and when you didn't object at the time of hearing. So I think, really, it's just very fundamental and rudimentary concepts of waiver and essential that apply. I mean, really, is this any different than what would happen in a trial? If a party doesn't ask for a 501 instruction, they're not going to be heard on appeal. They'll be hollering that one wasn't given. Well, it's funny because they cite Kearns in their brief. Plaintiff does, and in Kearns, that instruction wasn't included by the trial court, but it had been asked for. That issue was preserved on appeal. This is the exact opposite scenario. There is no evidentiary presumption. And I do think that that's what kind of, you know, when we're trying to rectify these two decisions, Justice Stewart, I think that's what really muddied the water, and that's what the commission, I thought, definitely tried to navigate. I mean, in their decision on remand, they even say, look, let's assume this under a light most favorable to the plaintiff. We're going to apply the presumption. And guess what? It doesn't matter because it doesn't outweigh these very significant credibility issues with this claimant. And, you know, once we remove that, this concept of the adverse evidentiary presumption, again, I think it's very straightforward. It's just an accident case. The commission's factual findings were accurate. You know, I have our trial transcript. There's 12 exhibits that plaintiffs entered at the time of hearing, and there's not a single page in any of those 12 exhibits that corroborates or materially enhances this argument that there was a re-aggravation or injury on July 26, 2011. Out of this entire transcript, there's probably one page of testimony, a single page from the claimant. It occurs to me that if one were to find that the commission's original decision was not against the manifest weight of the evidence, then all the issues that your opponent has raised relating to the commission's decision on remand are mooted. I would agree with that. And, again, just in summary, I think it's the province or the workers' compensation to assess the credibility of the witnesses. That was the primary ruling, the primary basis of their ruling on the issue of accident. I am asking that it not be disturbed on review. And unless there's any additional questions, that is the completion of my argument. Okay, counsel. Thank you for your argument. Counsel, you may reply. Your Honors, there's contention that the issue of an adverse presumption was waived. It's not an issue that could have been raised any earlier. It's not something that, you know, goes on any longer. Excuse me. Did your wit and did your claimant testify at the original hearing that he gave notice to these supervisors? Yes. And when they didn't call those supervisors, you could ask for an adverse inference. You didn't. The only time you can do that, Your Honor, is in the proposed findings, which we did. Why can't you? It's not like a 501 situation. Why can't you do it immediately after the respondent rests? You're at a hearing. Because there's just no mechanism to do it or reason to do it, Your Honor. I don't understand there's no mechanism. Hold on. I don't understand there's no mechanism. You have a voice. You've got an arbitrator sitting there. You've got a respondent that says, I rest. And you turn around and say, Mr. Arbitrator, he didn't produce those two supervisors that my client testified he told he had an accident to. I want an adverse inference. Why can't you say that? Because there's nothing said at that portion of the trial. Because you didn't say it. But it's not just that you don't say it, Your Honor. I think the 501 is the best situation. It's not like there's a time to do that in a workers' compensation proceeding. Are you prohibited from doing it before the arbitrator rules? I don't think you'd be prohibited, but I don't think it serves any purpose. Did you put it in your statement of exceptions to the commission? Yes. When you appealed the first time? Yes. And in our reply brief to that specific reference, we did. Can I ask a follow-up to that? Just in terms of procedure, but at that hearing, do you have an opportunity and do you typically give any kind of closing remark? You do have the opportunity. It's fairly unusual to do it. And none was given by either side in this instance. I mean, the issues of law are always really discussed in the proposed findings, which don't go into the record. If you don't have a jury seated and you've got a bench trial, you're going to raise the adverse inference to the judge before the judge rules. Well, respectfully, Your Honor, even with a bench trial, it would typically be the same situation where you're going to exchange some sort of closing briefs, and then I would raise the issue, not at the end. Who exchanges closing briefs in a bench trial? Well, in commercial cases, it's pretty typical. But you don't do it in tort cases. And, Your Honor, in that situation, if you give a closing argument, yes, you would raise the issue during a closing argument. But here there's no closing argument. The issues of law are discussed in the proposed findings. Which creates a problem, okay? And this isn't the first time we've seen this. I mean, this comes up. You know, every practitioner knows, though, that those are not part of the record. Right. And you know it's not part of the record. And so... But I don't think that gives rise to a waiver in any event for a couple of reasons. Number one, it was raised in a statement of exceptions to the commission. And the commission has original jurisdiction or did not hold review. So even assuming for the sake of argument it wasn't raised at arbitration, I don't think that's a relevant distinction. I mean, that's another issue. Yeah. And my point is practitioners need to realize that to come in and say I raised it in my proposed findings of fact, as far as we're concerned, it's not raised because it's not a part of the record. Yeah. And I can tell you, and maybe we're getting a little on a tangent, but I've filed proposed findings and they still don't make it into the record. So I recognize Your Honor's point. But I suppose more importantly, I don't think whether it was really raised in the proposed findings, I don't think is really all that important. It was certainly raised in the statement of exceptions. And then probably most importantly, the fact that the circuit court remanded the matter initially and the issue was considered anew. If the issue that we address first is whether the first decision of the commission was or was not against the manifest way of the evidence, if we decide that and say it is not against the manifest way of the evidence, then everything you raise about what they did on remand is totally irrelevant. It's moot. Because we're not here to discuss what they did on remand. We're only here to discuss what was before the circuit court with the first opinion. You're correct, Your Honor, but I would just say two things. Number one, I don't think the employer has contended that that original decision was correct, at least in the briefing. And so I don't think that this court really should have raised that issue. I mean, our cases suggest that's our obligation. That when we have a case like this that comes on remand, our first duty is to examine the first decision. True, but it's not, I don't think it's an issue like jurisdiction where it needs to be addressed, even if not raised. I think in this case the issue has been conceded. I think that's all I have unless there are any questions. I would ask that you reverse the decision. Thank you, counsel. Thank you, counsel. This matter will be taken under advisement. Written disposition shall issue. The court will stand at recess until 1.30.